**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――――――

**RONALD L. WILEY,**

                              **Plaintiff,**

                                                        **Civil No. 7:04-CV-1215**
            **v.**                                       **(GLS/GJD)**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                              **Defendant.**

―――――――――――――――――――――――――――――

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**

CONBOY, McKAY LAW FIRM          PETER L. WALTON, ESQ.
407 Sherman Street
Watertown, New York 13601-9990

**FOR THE DEFENDANT:**

HON. GLEN T. SUDDABY            WILLIAM H. PEASE
United States Attorney          Assistant United States Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

Pursuant to 42 U.S.C. § 405(g), Ronald L. Wiley challenges the denial of disability benefits by the Commissioner of Social Security. Pending are Wiley's objections to Chief Magistrate Judge Gustave J. DiBianco's Report-Recommendation. *See Dkt. Nos.* 24, 25. Upon careful consideration of the arguments, the relevant parts of the record, and the applicable law, the court adopts the Report-Recommendation in its entirety.[1]

## II.  <u>Procedural History</u>

Wiley filed for disability benefits in April 2001, alleging disability as of June 29, 2000. His application was denied, and a hearing was conducted by an Administrative Law Judge (ALJ). On October 25, 2002, the ALJ issued a decision denying benefits, and that decision became the Commissioner's final determination.

Wiley filed a complaint in the Northern District of New York challenging the Commissioner's denial of benefits. *See Dkt. No. 1.* On October 19, 2005, Wiley filed a motion to submit new evidence. *See Dkt. No. 18.* On March 31, 2006, Chief Magistrate Judge DiBianco issued a

_____

[1]The Clerk is directed to append Judge DiBianco's Report-Recommendation to this decision, and familiarity is presumed. *See Dkt. No. 24.*

report recommending affirmance of the Commissioner's decision and denial of Wiley's motion to submit new evidence.  *See Dkt. No. 24.*  On April 10, Wiley filed his objections.  *See Dkt. No. 25.*

## III.  Discussion[2]

### A.    Standard of Review

By statute and rule, district courts are authorized to refer social security petitions to Magistrate Judges for proposed findings and recommendations regarding disposition.  *See* 28 U.S.C. § 636(b)(1)(A) & (B); N.D.N.Y. R. 40.1, 72.3(d); General Order #18.

When a report and recommendation is filed, the parties have ten (10) days from receipt of the report to file specific, written objections to proposed findings and recommendations, and ten (10) days from the receipt of adversary objections to file responses.  *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); N.D.N.Y. R. 72.1(c).  The local rules further require that the objections must specify the findings and recommendations which are the subject of the objections, and the substantive basis for these objections.  *See* N.D.N.Y. R. 72.1(c).

––––––––––––––––––––

[2]The court adopts the factual summary in Chief Judge DiBianco's Report-Recommendation.  *See Dkt. No. 24.*

The rules governing objections to report-recommendations in the *habeas corpus* context are the same rules applicable to social security petitions.  The district court must review *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved by compliance with the specificity requirement.  *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); N.D.N.Y. R. 72.1(c).  After review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge ... [and] may also receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).

If a party fails to object in a timely manner, it procedurally defaults and is not entitled to judicial review.  *See Almonte v. New York State Div. of Parole*, No. 04-CV-484, 2006 WL 149049, at *3 (N.D.N.Y. Jan. 18, 2006) (citation omitted).  "Although the doctrine of procedural default developed as a circuit appellate rule, it applies in the district courts as long as parties, including those appearing *pro se*, receive clear notice of the consequences of their failure to properly object."  *Id*; *see also Thomas v. Arn*, 474 U.S. 140, 149 & n.7 (1985).  "[T]he notice requirement is satisfied if the report at least states that the failure to object will preclude appellate review[.]"

4

*Almonte*, 2006 WL 149049, at *3 (citation omitted).[3]

Although failure to object or timely object constitutes procedural default, lack of specificity also gives rise to default. *See id.*, at *4. The local rule requires that objections address specific findings and conclusions. *See id.* Therefore, a party that limits its specific objections to a part of a report's findings or recommendations procedurally defaults as to the remainder. *See id.* Frivolous or conclusory objections also fail to satisfy the specificity requirement. *See id.* Furthermore, mere resubmission of the same papers and arguments as submitted to the magistrate judge fails to comply with the specificity requirement and also results in default. *See id.*

The district court must review *de novo* those portions of the magistrate judge's findings and recommendations that have been properly preserved by compliance with the specificity requirement. *See id.,* at *5; *see also* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); N.D.N.Y. R.

---

[3]The following statement accompanies all magistrates' reports issued in this district: "[P]ursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the [c]lerk of [c]ourt. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**" *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e); *see Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1983); *Small v. Sec'y of Health & Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

72.1(c).[4]  "*De novo* review requires that the court 'give fresh consideration to those issues to which specific objections have been made.'  It will examine the entire record, and make an independent assessment of the magistrate judge's factual and legal conclusions."  *Almonte*, 2006 WL 149049, at *5 (citation omitted).  After review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge...[and] may also receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); *see also Almonte*, 2006 WL 149049, at *3 (citations omitted).

"The more complex question arises when a party procedurally defaults, the court is not statutorily mandated to conduct *de novo* review

---

[4]The decision to use procedural default is in the discretion of the district court.  *See Almonte,* 2006 WL 149049, at *4 (citation omitted).  "Such discretion is based on, among other factors, whether the defaulted argument has substantial merit or, put otherwise, whether the magistrate judge committed plain error in ruling against the defaulted party."  *Id.* (citation omitted).  "As the Supreme Court has observed:

'[T]he district court...must exercise supervision over the magistrate.  Even ... [if a procedural default rule permits a] ... district judge ... to refuse to review a magistrate's report absent timely objection ... [t]he rule merely establishes a procedural default that has no effect on the ... court's jurisdiction.  The district judge has jurisdiction over the case at all times.  He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment.  Any party that desires plenary consideration need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review, *sua sponte* or at the request of a party, under a *de novo* or any other standard.'"  *Id.* (quoting *Thomas v. Arn*, 474 U.S. 140, 154 (1985)).

nor does it elect to do so, but it concludes that some review is in order nonetheless."  *Almonte*, 2006 WL 149049, at *5.  Under these circumstances, it is within the court's discretion to elect an appropriate review standard.  *See id.*

In the case of procedural default, "28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure are both silent on the review standard[.]..."  *Id.*  "[D]istrict courts have applied standards with varying names and definitions."  *Id.*, at *6.  "[S]ome adopt the 'clearly erroneous' standard that is articulated in the statute and federal rule governing review of a magistrate judge's nondispositive orders, and referenced in the 1983 Advisory Committee Note."[5]  *Id.* (citations omitted).  "Given the definition typically assigned to 'clearly erroneous,' the courts review a report to determine whether the findings are against the clear weight of the evidence, or whether the recommendations cause the court to definitely and firmly conclude that a mistake has been committed."  *Id.*  "Other courts

─────────────────────

[5]"The Rule 72(b) Advisory Committee Note suggests that the court will review for 'clear error,' stating:

'When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  FED. R. CIV. P. 72(b) advisory committee's note (1983) (citations omitted); *see also Almonte*, 2006 WL 149049, at *5 (citations omitted).

have adopted a 'contrary to law' standard which means that the report fails to apply, or misapplies, relevant statutes, case law, or rules of procedure." *Id.* (citations omitted).  "When excusing procedural default in the interests of justice, the Circuit has reviewed the underlying decision or report for 'plain error.'"  *Id.* (citations omitted).  "Plain error is one that is clear or obvious and affects substantial rights."  *Id.* (citations omitted).

"Mindful that district courts retain jurisdictional authority over all dispositive issues, this court routinely reviews reports before entering final judgment whether objections are registered or not."  *See Almonte*, 2006 WL 149049, at *6.  When the court does so, however, it is aware that the reports are generated by magistrate judges with extraordinary professional and judicial experience."  *Id.*  "Accordingly, when required by statute or rule or when the court's routine review so dictates, the court will make a *de novo* determination of findings and recommendations."  *Id.*  "Absent *de novo* review, the court will apply a 'clearly erroneous' standard, and defines that phrase as follows: a report is clearly erroneous if the court determines that there is a mistake of fact or law which is obvious and affects substantial rights."  *Id.*  "Furthermore, the court will routinely identify issues which have been procedurally defaulted, and articulate the standard of

review applied to all issues." *Id.*

**B.   Objections**

Wiley proffers several specific objections to Chief Magistrate Judge

DiBianco's report.  The court applies a clearly erroneous standard of review

to Wiley's sole objection to the Chief Magistrate Judge's denial of his non-

dispositive motion, and the court applies a *de novo* standard of review to

Wiley's remaining objections.

### 1.   Newly Submitted Evidence

Wiley's first objection is to Chief Judge DiBianco's denial of his

motion to supplement the record with new and additional evidence.

Because this objection attacks a magistrate judge's recommendation to

deny a non-dispositive order, the court applies a clearly erroneous

standard of review.  *See* FED. R. CIV. P. 72(a).

Wiley claims that the new evidence, including extensive diagnostic

findings from his treating physician and a consultative physician, support

the conclusion that he is unable to work.  More specifically, Wiley contends

that Chief Judge DiBianco erred in dismissing the new evidence as

irrelevant and immaterial because: (1) the new evidence helps establish

that the ALJ should have afforded controlling weight to Dr. Wasicek's

9

opinion; (2) evidence of Wiley's current impairments may demonstrate that the Commissioner's decision was not supported by substantial evidence; and (3) the newly submitted 2004 report by Dr. Hughes[6] and the 2005 narrative report by Dr. Wasicek,[7] which both utilize workers' compensation terminology, are persuasive tools evidencing Wiley's disability status.

The Second Circuit in *Tirado v. Bowen*, 842 F.2d 595 (2d Cir. 1988), established the requirements necessary to supplement the record with new evidence.  The evidence must be "(1) new and not merely cumulative of what is already in the record,...and...(2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative[.]"  *Tirado*, 842 F.2d at 597 (quotation marks and citation omitted).  Moreover, the claimant must show "good cause for [his] failure to present the evidence earlier."  *Id.*  Chief Judge DiBianco concluded that Wiley failed to satisfy the *Tirado* standard.

The court has reviewed Wiley's objection to Chief Judge DiBianco's decision under a clearly erroneous standard.  As Chief Judge DiBianco properly concluded, some of the evidence submitted is cumulative of what

---

[6]Dr. Hughes is a consultative physician.

[7]Dr. Charles Wasicek is Wiley's treating physician.

is already in the record, and the rest is not probative of Wiley's condition

during the relevant disability period.  The court agrees with Chief Judge

DiBianco's analysis, finding no clear error.  Accordingly, the portion of the

Report-Recommendation denying Wiley's motion to supplement the record

is adopted in its entirety.

### 2.    Treating Physician Rule

Wiley objects to Chief Judge DiBianco's finding that the ALJ properly

rejected Dr. Wasicek's findings and opinions.  More specifically, he claims

that Chief Judge DiBianco erred when he: (1) improperly discounted the

opinion of Dr. Wasicek; (2) erroneously credited other medical opinions

over that of Dr. Wasicek's; and (3) improperly failed to remand the case for

reconsideration based on the recent discovery of the cause of Wiley's

condition.

Generally, the opinion of a treating physician is given controlling

weight if it is based upon well-supported, medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with other

substantial evidence.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see*

*also Foxman v. Barnhart*, 157 Fed. Appx. 344, 346 (2d Cir. 2005).  An "ALJ

cannot arbitrarily substitute his own judgment for [a] competent medical

opinion." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quotation

marks and citation omitted).  If the treating physician's opinion is not given

"controlling weight," the ALJ must consider the entire record and give

special assessment to several factors to determine how much weight to

afford the opinion.  *See* 20 C.F.R. § 404.1527(d)(2).  The factors are: "the

length of the treatment relationship and the frequency of examination" by

the treating physician for the condition(s) in question, the medical evidence

supporting the opinion, the consistency of the opinion with the record as a

whole, the qualifications of the treating physician, and other factors tending

to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2)-(6),

416.927(d)(2)-(6).

Moreover, the "ultimate finding of whether a claimant is disabled and

cannot work...[is] reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d

128, 133 (2d Cir. 1999) (quotation marks and citation omitted).  "That

means that the Social Security Administration considers the data that

physicians provide but draws its own conclusions as to whether those data

indicate disability." *Id.*  Thus, a treating physician's disability assessment is

not determinative.  *See id.*  Furthermore, where the evidence of record

includes medical source opinions that are inconsistent with other evidence

or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

As an initial matter, the court notes that the ALJ properly discounted Dr. Wasicek's opinion of "total" disability because he was the only one of several treating physicians to opine that Wiley was totally disabled. *See* Tr. 42. The ALJ did acknowledge that Wiley suffered from an impairment, but his analysis supports his conclusion that Wiley was capable of performing light work.[8] *See id.*

Chief Judge DiBianco properly points out that Dr. Wasicek's opinion regarding Wiley's disability status is not supported by radiological reports, which were essentially normal.[9] *See* Tr. 247-273. Moreover, there are other medical opinions in the record by physicians who examined Wiley, and those opinions contradict Dr. Wasicek's disability determination. *See*

———————————

[8]Wiley objects to Chief Judge DiBianco's dismissive treatment of the knowledge that the underlying cause of Wiley's condition was thoracic outlet syndrome. Even if true, the knowledge of the cause of Wiley's condition does not contradict the evidence on the record, and the ALJ was entitled to consider the record as a whole. *See* 20 C.F.R. §§ 404.1527. In doing so, he properly found that Dr. Wasicek's opinion was contrary to the weight of the evidence and should thus be afforded less weight.

[9]Wiley objects to Chief Judge DiBianco's acceptance of the ALJ's statement that Wiley did not suffer from rheumatism. In his objections, Wiley defines rheumatism for the court and argues that his symptoms fall within the broad definition which he describes. Presuming without deciding that Wiley does suffer from rheumatism, this does not change the decision of the court. The ALJ properly discounted the opinion of Dr. Wasicek, Wiley's treating physician.

13

Tr. 143, 206, 267-269.  Dr. Mosher, another treating physician, stated on September 24, 2004 that Wiley was "[d]oing well."  *See* Tr. 277.  He also concluded that Wiley did not need therapy.  *See id.*  In addition, Dr. Wasicek's assessment is inconsistent with that of the statements Wiley himself made to Dr. Mosher, including the statement that he was happy with the results of his shoulder surgery.  *See* Tr. 276-279.

The record shows that there are no other medical opinions substantiating Dr. Wasicek's disability determination.[10]  *See* Tr. 177-184. The physical RFC assessment completed on July 6, 2001, states that Wiley can occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, and stand and walk 6 hours in an 8-hour day.  *See* Tr. 178. Moreover, the majority of the diagnostic tests in the record revealed results in normal ranges.  *See* Tr. 205-209, 210-212, 214.

As Chief Judge DiBianco properly noted, the ALJ did accept the fact that Wiley was severely limited on his left side.  *See* Tr. 41-42.  Dr. Neulander diagnosed atrophy in Wiley's left arm.  *See* Tr. 147.  However,

---

[10]Dr. Wasicek stated on April 8, 2004 that Wiley's condition had deteriorated to the point where he could not "stand more than 20 minutes[,]...sit more than 20 minutes," and "[i]f he has to walk more than 15 minutes, he gets back pain."  *See* (Tr. 508).  This statement is irrelevant to court's analysis because it was made nearly three years after the relevant period for Wiley's disability determination.

on September 17, 2001, Dr. Todd[11] noted that he "did not detect any

atrophy in any muscle group."  Tr. 206.

Chief Judge DiBianco properly considered Wiley's treating

physicians' opinions and concluded that Dr. Wasicek's disability

determination was not supported by the medical record.  After conducting a

*de novo* review of the underlying record, the court concurs in Chief Judge

DiBianco's analsyis.  Accordingly, Chief Judge DiBianco properly found

that the ALJ's findings were supported by substantial evidence.

### 2.    Subjective Allegations of Pain

Wiley objects to Chief Judge DiBianco's conclusion that the ALJ

properly discounted his allegations of disabling pain.  Wiley argues that

Chief Judge DiBianco's emphasis on the distinction between a July 29,

2002 report by Dr. Wasicek, stating that plaintiff's incision "looks to be

healing," and a July 30, 2002 report of a non-treating physician, stating that

plaintiff's incisions were "well healed," was misplaced.  Wiley claims that

Chief Judge DiBianco erred when he failed to clarify how the differing

observations in the healing rate of plaintiff's incisions impugned his

subjective allegations of pain.

_____

[11]Dr. Robert E. Todd is Wiley's treating neurologist.

The Commissioner is obligated to evaluate all of a claimant's symptoms, "including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]..."  20 C.F.R. §§ 404.1529(a), 416.929(a).  The ALJ must perform a two-step analysis.  *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Crouch v. Comm'r, Soc. Sec. Admin.*, 6:01-CV-0899, 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003) (citation omitted).  "First, the ALJ must determine, based upon the objective medical evidence, whether the impairments 'could reasonably be expected to produce the pain[12] or other symptoms alleged[.]...'"  *Crouch*, 2003 WL 22145644, at *10 (citing 20 C.F.R. §§ 404.1529(a), 416.929(a)).  "Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work."  *Id.* (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).

A plaintiff may suffer some degree of pain as a result of a condition.

---

[12] The pain must be properly evaluated, considering the applicant's credibility and motivation as well as the medical evidence of impairment to reach an independent judgment concerning the true extent of the alleged pain, and the degree to which it hampers the applicant's ability to engage in substantial gainful employment.  *See Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

However, some pain does not automatically translate into disabling pain. *See Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983) ("disability requires more than mere inability to work without pain").  Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]."  *See* 42 U.S.C. § 423(d)(5)(A).

Where the alleged symptoms suggest that the impairment is greater than demonstrated by objective medical evidence, the ALJ will consider other factors.  *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).  These factors include daily activities, the location, duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatment or measures to relieve those symptoms.  *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  SSR 96-7p, 1996 WL 374186, at *4.  Therefore,

> "[a]n [ALJ] may properly reject [subjective complaints]...after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable [the courts] to decide whether the determination is supported by substantial evidence."

17

*Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted); *see also Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987).

In this case, Wiley claims that he suffered from chronic and persistent pain that precluded him from engaging in even light work.  In particular, Wiley alleges that he has severe impairments affecting his left arm, shoulder, back and neck.

Wiley's objections are without merit.  His daily activities coupled with the lack of medical evidence belie his contention of disabling pain.  As Chief Judge DiBianco noted, Wiley testified at the administrative hearing that he could lift twenty-five pounds with his right hand.  *See* Tr. 38. Furthermore, a test of Wiley's grip strength showed substantial strength in his right hand versus his left hand.  *See* Tr. 141.  The ALJ did not completely discount Wiley's testimony that his left hand was not as strong as his right.  *See* Tr. 38.  In fact, the ALJ noted that Wiley had medically determinable impairments that could produce pain.  *See* Tr. 43.

Nevertheless, the record demonstrates that Wiley wakes up at five a.m., checks on his dogs, watches television, and puts dishes in the dishwasher.  *See* Tr. 38.  He is also able to go shopping, visit neighbors

18

occasionally, and drive for a period of twenty minutes.  *See id.*  As the Second Circuit has noted and the record demonstrates, although Wiley may have pain, some pain does not necessarily mean disabling pain.  *See Dumas*, 712 F.2d at 1552.  Accordingly, the ALJ's decision was based on substantial evidence.

### 3.    Severity of Neck Impairment

Wiley argues that Chief Judge DiBianco erroneously accepted the ALJ's conclusion that Wiley's neck impairment was non-severe.  As Chief Judge DiBianco explained, the definition of a severe impairment is one that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c), 404.1521.  "Basic work activities" include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling[.]"  20 C.F.R. § 404.1521(b)(1).  Basic work activities also include "[c]apacities for seeing, hearing, and speaking;...[u]nderstanding, carrying out, and remembering simple instructions;...[u]se of judgment;..." and other mental functions required for work.  20 C.F.R. § 404.1521(b)(2)-(6).

As Chief Judge DiBianco explained, the ALJ specifically found that

Wiley's shoulder impairment and degenerative disc disease were severe

impairments.  *See* Tr. 35-36.  Wiley now argues that his neck impairment is

more serious than as previously characterized by the ALJ.  The court

concludes, based on its review of the medical record, that the ALJ properly

considered the severity of Wiley's neck impairment in making an

appropriate disability determination.  While finding his disability severe, the

ALJ did not find him unable to work.  *See* Tr. 37-43.

Dr. Mosher, an orthopedist who treated Wiley, stated in a May 30,

2001 office note that he "can see no diminished muscle mass on the left as

compared to the right" and that Wiley had "pain when turning his neck and

bending to the right along with pain turning the neck to the left."  Tr. 166.

Dr. Mosher also stated that he could uncover "no distinct pathology except

his pain and give-way weakness which lasted many, many months without

diagnosis."  *Id.*

Wiley was also examined by Dr. Todd on September 17, 2001.  *See*

Tr. 205-213.  Dr. Todd remarked in his notes that he was not sure he could

offer Wiley any more guidance from a neurological perspective.  *See* Tr.

207.  He personally reviewed the MRIs of Wiley's cervical and thoracic

spine and the MRI of Wiley's brachial plexus, and he did not see any

abnormalities in any of those areas.  *See id.*

In an addendum attached to the September 17th office note, Dr. Todd noted that he discussed Wiley's case in detail with a neuroradiologist at Crouse Hospital.  See Tr. 208.  Dr. Todd noted that the neuroradiologist agreed with his assessment of Wiley's MRIs.  *See id.*

Based on a *de novo* review of the medical record, the court concurs with Chief Judge DiBianco's analysis that the ALJ properly considered Wiley's neck impairment in making his disability determination.  Based on the records of Drs. Mosher and Todd and the diagnostic tests in the record, the court finds that the ALJ's decision was based on substantial evidence.

### 4.    RFC Assessment

Wiley argues that the ALJ's determination that he had the RFC for light work is contrary to the medical record and his own testimony, and, as such, is unsupported by substantial evidence.  Moreover, Wiley objects to Chief Judge DiBianco's recommendation that the court deny his request for remand in reconsideration of his RFC.  Consequently, he contends that the ALJ erred when he substituted his judgment for that of competent medical sources.  Wiley's position is without merit.

The Regulations define RFC as "the most [an individual] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  At the review level relevant here, the responsibility for determining a claimant's RFC rests with the ALJ.  *See* 20 C.F.R. §§ 404.1546, 416.946.  An ALJ's RFC assessment is a medical determination that must be based on probative medical evidence of record.  *See Gray v. Chater*, 903 F. Supp. 293, 301 (N.D.N.Y. 1995).  As stated, an ALJ may not "substitute his own judgment for [a] competent medical opinion."  *Rosa*, 168 F.3d at 79; *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted).  However, such is not the case here.

Wiley contends that the ALJ's finding that he could do limited light work was solely based on the RFC assessment of a non-reviewing state agency physician.  *See* (Tr.177-184).  As an initial matter, the ALJ's reliance on this RFC assessment was not improper.  "State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."  *Leach ex rel. Murray v. Barnhart*, No. 02 Civ. 3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004); *see also Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

22

Moreover, the ALJ based his RFC determination on many factors. He considered the medical records of Wiley's treating physicians, Drs. Mosher and Todd.  *See* Tr. 38-40.  He also considered the specific limitations caused by Wiley's left-sided pain, weakness, numbness, and lack of dexterity.  *See* Tr. 38.  Dr. Shayvitz, a consultative examiner, stated that Wiley's arm and shoulder pain were "not increased by sitting or standing," and Wiley's back pain was "not increased by sitting, standing, walking, or bending."  *See* Tr. 169.

Upon review of the record, the state agency RFC assessment is consistent with and supported by the objective medical record, and the ALJ properly relied on it in making his determination.  *See* 20 C.F.R. §§ 404.1527(f), 416.927(f).  Moreover, the same records were taken into consideration and amply discussed by the ALJ in his decision.  *See* (Tr. 36-40).  Accordingly, based on the above, the ALJ's RFC determination that Wiley was capable of performing limited light work was supported by substantial evidence and not erroneous as a matter of law.

### 5.    Vocational Expert Testimony

Wiley's final objection is to Chief Judge DiBianco's recommendation

23

that the court accept the ALJ's reliance on certain portions of the vocational expert's testimony.  More specifically, Wiley argues that the hypothetical questions posed to the vocational expert erroneously failed to incorporate the limitations opined by Dr. Wasicek.  He also claims that the vocational expert's statement that six hours of work per day is a full day's work is contrary to the established social security regulation guidelines.[13]

A vocational expert may provide testimony regarding the existence of jobs in the national economy.  *See Dumas,* 712 F.2d at 1553-1554.  "The vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job."  *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  "Proper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform."  *Lugo v. Chater*, 932 F. Supp. 497, 504 (S.D.N.Y. 1996).

---

[13]This argument lacks merit.  The vocational expert's statement that six hours of work per day is, to him, a full day's work was a statement of opinion.  *See* Tr. 545.  Therefore, this objection is factual in nature and does not turn on the legality of the ALJ's decision to accept the vocational expert's testimony.

The ALJ concluded that Wiley's ability to perform the full range of light work was substantially diminished by his additional limitations. Therefore, he did not apply the Medical Vocational Guidelines in determining that Wiley could still perform substantial gainful activity despite his limitations.  In a series of hypotheticals posed to the vocational expert, the vocational expert consistently responded that Wiley could still perform at least one of the jobs mentioned.  *See* Tr. 533-534.

Here, Wiley reargues that Dr. Wasicek's opinion should have been given controlling weight.  He claims that the vocational expert's testimony should have reflected Dr. Wasicek's opinion.  The court has already determined that the ALJ properly considered and rejected Dr. Wasicek's opinion.  The court also concluded that the ALJ properly considered Wiley's allegations of pain and the medical record in making his RFC determination.  Accordingly, the ALJ's decision was based on substantial evidence.

## IV.  Conclusion

For the reasons stated above, this court accepts and adopts the recommendation of Chief Judge DiBianco for the reasons stated in the

March 31, 2006 Report-Recommendation.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and the complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk provide a copy of this Decision and Order to the parties.

**IT IS SO ORDERED.**

July 10, 2006
Albany, New York

Gary L. Sharpe
U.S. District Judge